Magistrate Judge David W. Christel

# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>CHRISTOPHER MROWCA,<br>ALEXANDER HAWATMEH,<br>and MIKHAIL GALAS,<br><br>Defendants. | MAGISTRATE'S<br>DOCKET NO.  MJ14-5172<br><br>COMPLAINT FOR VIOLATION<br>OF Title 18 U.S.C. §371 and<br>Title 18 U.S.C. § 1956(h) |

Before, David W. Christel, United States Magistrate Judge, Vancouver, Washington.

The undersigned complainant, Special Agent, Thomas D. Koh, being duly sworn states:

### COUNT ONE
**(Conspiracy to Commit Securities Fraud)**

1.     Beginning at a time unknown but no later than in or about December 2011, and continuing through in or about June 2012, within the Western District of Washington and elsewhere, defendants CHRISTOPHER MROWCA, ALEXANDER HAWATMEH, and MIKHAIL GALAS, together with others known and unknown, did knowingly and willfully conspire to use and employ manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States

Complaint/Mrowca et al- 1

UNITED STATES ATTORNEY<br>700 Stewart Street, Suite 5220<br>Seattle, Washington 98101<br>(206) 553-7970

1    Securities Exchange Commission, Title 17, Code of Federal Regulations, Section

2    240.10b-5 by: (i) employing devices, schemes, and artifices to defraud; (ii) making

3    untrue statements of material facts and omissions of material facts necessary in order to

4    make statements made, in light of the circumstances under which they were made, not

5    misleading; and (iii) engaging in acts, practices, and courses of business which would and

6    did operate as a fraud and deceit upon persons, directly and indirectly, by use of the

7    means and instrumentalities of interstate commerce and in connection with the purchase

8    and sale of securities, contrary to Title 15, United States Code, Sections 78j(b) and 78ff.

9                                    ESSENCE OF THE SCHEME

10        2.        CHRISTOPHER MROWCA, ALEXANDER HAWATMEH, and

11   MIKHAIL GALAS, together with others known and unknown, agreed to defraud

12   investors by engaging in a stock "pump and dump" scheme involving the stock of ISM

13   International (ticker symbol 'ISML'). In furtherance of the conspiracy, HAWATMEH,

14   GALAS and other associates, first accumulated large positions in ISML in brokerage

15   accounts that they controlled. During and after accumulating the shares, MROWCA,

16   HAWATMEH, GALAS, together with others, "pumped" the share price of the stock by,

17   among other thing, (1) engaging in secret, coordinated trading designed to artificially

18   increase the price of the stock, while also creating the false appearance of demand, and

19   (2) sending fraudulent and misleading "blast" e-mails through promotional websites and

20   email addresses under their control with the intent of increasing demand for the stock.

21        3.        After a period of manipulation, on or about April 20, 2012, MROWCA,

22   through an online stock promotion company he controlled, distributed email messages

23   urging investors to buy ISML. During the time of the promotion, HAWATMEH,

24   GALAS, and other associates "dumped" all of their accumulated ISML shares by selling

25   it to unsuspecting investors at the artificially high prices they themselves had created,

26   with the intent to share the proceeds of those sales amongst themselves.

27

28

Complaint/Mrowca et al- 2

OVERT ACTS

4.      In furtherance of the conspiracy and to effect its objects, within the Western District of Washington and elsewhere, the defendants CHRISTOPHER MROWCA, ALEXANDER HAWATMEH, and MIKHAIL GALAS, together with others, committed and caused to be committed, among others, the following:

a.      Between on or about December 15, 2011, and April 10, 2012, ALEXANDER HAWATMEH purchased in E*Trade brokerage account number ending *9710, the stock of ISML at prices ranging from approximately $0.009 to $0.09, eventually accumulating approximately 2.6 million shares.

b.      Between on or about April 11, 2012 and April 20, 2012, HAWATEMEH was a net seller of ISML, often selling in coordinated "matched trades" to MROWCA, GALAS, and a Confidential Source (hereinafter "CS-1").  Some of the suspected matched trades are listed as follows:

| Date | Account | Order Time | Order Quantity | Limit Price | Buy/ Sell | # of Shares Executed | Exec. Price | Execution Time |
|---|---|---|---|---|---|---|---|---|
| 4/13/12 | Hawatmeh | 11:52:16 AM | 100,000 | $0.0650 | Sell | 50,000 | $0.06500 | 12:03:04 PM |
| 4/13/12 | Mrowca | 12:02:58 PM | 10,000 | $0.0700 | Buy | 10,000 | $0.06500 | 12:03:04 PM |
| 4/16/12 | Hawatmeh | 11:23:16 AM | 140,000 | $0.0700 | Sell | 70,000 | $0.07000 | 11:32:38 AM |
| 4/16/12 | CS-1 | 11:31:41 AM | 100,000 | $0.0700 | Buy | 100,000 | $0.07000 | 11:32:38 AM |
| 4/16/12 | CS-1 | 1:12:25 PM | 70,000 | $0.0750 | Buy | 70,000 | $0.07500 | 1:13:26 PM |
| 4/16/12 | Mrowca | 1:13:03 PM | 115,000 | $0.0750 | Sell | 70,000 | $0.07500 | 1:13:26 PM |
| 4/19/12 | Galas | 9:13:37 AM | 30,000 | $0.0800 | Buy | 500 | $0.08000 | 12:02:01 PM |
| 4/19/12 | Hawatmeh | 12:01:40 PM | 500 | $0.0100 | Sell | 500 | $0.08000 | 12:02:01 PM |
| 4/20/12 | Mrowca | 9:34:12 AM | 5,000 | $0.2300 | Buy | 1,372 | $0.19000 | 9:34:42 AM |
| 4/20/12 | Hawatmeh | 9:34:16 AM | 100,000 | $0.1800 | Sell | 100,000 | $0.19000 | 9:34:42 AM |

c.      By the close of trading on April 19, 2012, HAWATMEH maintained approximately 995,000 shares of ISML in his E*Trade Account *9710.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

d.      Between on or about April 13, 2012 and April 19, 2012, MROWCA bought and sold approximately 125,000 shares of ISML in E*Trade brokerage account number ending *3734.  By the close of trading on April 19, 2012, MROWCA did not have any shares of ISML remaining in his E*Trade account.

e.      Between on or about April 11, 2012 and April 19, 2012, in Vancouver, Washington and elsewhere, GALAS bought approximately 170,000 shares of ISML in a Fidelity brokerage account number ending *5453 and sold approximately 85,000 shares of ISML.  By the close of trading on April 19, 2012, GALAS maintained approximately 85,000 shares of ISML in his Fidelity brokerage account.

f.      On or about April 20, 2012, beginning at approximately 9:30 a.m. Eastern, Money Runners Group LLC, a stock promotion company controlled by MROWCA, disseminated an email promotion to its subscribers alerting them buy ISML.

g.      On or about April 20, 2012, HAWATMEH sold all 995,000 remaining shares of ISML in E*Trade Account *9710.

h.      On or about April 20, 2012, in Vancouver, Washington and elsewhere, GALAS sold all 85,000 remaining shares of ISML in his Fidelity account ending *5453.

i.      On or about the following dates, in Vancouver, Washington, HAWATMEH made or caused to be made cash deposits in a Wells Fargo account ending *1263 opened in the name of the CS-1:

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 4/23/12 | Cash Deposit | $6,000 |
| 4/30/12 | Cash Deposit | $8,000 |
| 5/15/12 | Cash Deposit | $8,000 |
| 5/17/12 | Cash Deposit | $8,000 |
| 5/25/12 | Cash Deposit | $7,600 |

j.      After each deposit described above, CS-1, in accordance with instructions from MROWCA, withdrew the cash and provided them to MROWCA.  The cash represented MROWCA's share of the proceeds from HAWATMEH's sale of ISML.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    All in violation of Title 18, United States Code, Section 371.

2                          **COUNT TWO**
3              **(Conspiracy to Launder Monetary Instruments)**

4    5.      Beginning at a time unknown but no later than in or about April 2012 and

5    continuing to in or about June 2012, in the Western District of Washington and

6    elsewhere, the defendants, ALEXANDER HAWATMEH and CHRISTOPHER

7    MROWCA, together with others known and unknown, did knowingly combine, conspire,

8    and agree with each other to commit offenses against the United States in violation of

9    Title 18, United States Code, Section 1956, to wit: to knowingly conduct and attempt to

10   conduct a financial transaction affecting interstate and foreign commerce, which involved

11   the proceeds of a specified unlawful activity, that is Securities Fraud, in violation of Title

12   15, United States Code, Sections 78j(b) and 78ff, and Rule 10b-5 of the Rules and

13   Regulations of the United States Securities Exchange Commission, Title 17, Code of

14   Federal Regulations, Section 240.10b-5, knowing that the transactions were designed in

15   whole or in part to conceal and disguise the nature, location, source, ownership, and

16   control of the proceeds of Securities Fraud, and that while conducting and attempting to

17   conduct such financial transactions, knew that the property involved in the financial

18   transaction represented the proceeds of Securities Fraud, in violation of Title 18, United

19   States Code, Section 1956(a)(B)(i).

20          ESSENCE OF THE SPECIFIED UNLAWFUL ACTIVITY:
21                          SECURITIES FRAUD

22   6.      The essence of the specified unlawful activity is that beginning at a time

23   unknown, but no later than in or about December 2011, and continuing through in or

24   about June 2012, CHRISTOPHER MROWCA, ALEXANDER HAWATMEH, and

25   Mikhail Galas, together with others known and unknown, did engage in a scheme and

26   artifice to defraud investors by engaging in a stock "pump and dump" scheme involving

27   the stock of ISML.

28

Complaint/Mrowca et al- 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

7.      It was a part of the scheme and artifice to defraud that HAWATMEH, Galas, and other associates first accumulated large positions in ISML in brokerage accounts that they controlled.  During and after accumulating the shares, MROWCA, HAWATMEH, and Galas, together with others, "pumped" the share price of the stock by, among other thing, (1) engaging in secret, coordinated trading designed to artificially increase the price of the stock, while also creating the false appearance of demand, and (2) sending fraudulent and misleading "blast" e-mails through promotional websites and email addresses under their control with the intent of increasing demand for the stock.

8.      It was further a part of the scheme and artifice to defraud that after a period of manipulation, on or about April 20, 2012, MROWCA, through an online stock promotion company he controlled, sent email messages urging investors to buy ISML. During the time of the promotion, HAWATMEH, Galas, and other associates "dumped" all of their accumulated ISML shares by selling it to unsuspecting investors at the artificially high prices they themselves had created, with the intent to share the proceeds of the those sales amongst themselves.

9.      It was further a part of the scheme that HAWATMEH alone generated profits of approximately $223,000 from the fraudulent manipulation and sale of ISML. HAWATMEH and MROWCA agreed and understood that a portion of the proceeds HAWATMEH obtained from the sale of ISML was to be shared with MROWCA.

## MANNER AND MEANS OF THE CONSPIRACY

10.     The manner and means used to accomplish the objective of the conspiracy to launder monetary instruments included, among others, the following:

a.      Sometime in or about April 2011, MROWCA approached CS-1and asked CS-1 to assist HAWATMEH in transferring to MROWCA a portion of the proceeds HAWATMEH generated from the sale of ISML.  MROWCA explained in substance to CS-1 that because MROWCA was responsible for the promotion of ISML, he could not be seen to have profited from the sale of ISML.  Instead, as further

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  explained by MROWCA, HAWATMEH traded ISML on behalf of MROWCA, and they
2  now needed the help of CS-1 to distribute the profits.  CS-1 agreed to help.

3          b.      On April 20, 2011, HAWATMEH sold all remaining shares of
4  ISML in E*Trade account number ending *9710, and generated, overall, profits of
5  approximately $223,000.  In the days immediately following the sale, from on or about
6  April 23, 2012, and continuing through on or about June 21, 2012, HAWATMEH wired
7  tens of thousands of dollars out of his E*Trade brokerage account into a Bank of America
8  Account ending *0402, held in the name of HAWATMEH.

9          c.      As HAWATMEH deposited the proceeds from his E*Trade account
10 in the days immediately following the sale of ISML, he also made a series of large cash
11 withdrawals in amounts ranging from $5,000 to $20,000.

12         d.      Then, in accordance with the agreement reached with CS-1 and
13 MROWCA, beginning on or about April 23, 2012, and continuing through on or about
14 May 25, 2012, HAWATMEH made the following deposits of cash into a Wells Fargo
15 account belonging to CS-1.  HAWATMEH made or caused to be made the cash deposits
16 at a Wells Fargo branch located in Vancouver, Washington:

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 4/23/12 | Cash Deposit | $6,000 |
| 4/30/12 | Cash Deposit | $8,000 |
| 5/15/12 | Cash Deposit | $8,000 |
| 5/17/12 | Cash Deposit | $8,000 |
| 5/25/12 | Cash Deposit | $7,600 |

22         e.      Once HAWATMEH deposited the cash into CS-1's Wells Fargo
23 account, in accordance with instructions from MROWCA, CS-1 withdrew the cash and
24 provided it to MROWCA.

25         f.      HAWATMEH also provided MROWCA with his share of the ISML
26 proceeds by purchasing precious metals on MROWCA's behalf.  On or about June 12,
27 2012, HAWATMEH wired or caused to be wired approximately $9,074.26 from his
28 Bank of America account ending *0402 to a precious metals dealer.  The funds were used

1   to purchase silver and gold coins and bars.  The silver and gold were caused to be

2   delivered to an address in Boulder, Colorado associated with MROWCA.

3         All in violation of Title 18, United States Code, Section 1956(h).

4         And the Complainant further states:

5   ## I. QUALIFICATIONS OF AGENT

6         11.   I am a Special Agent (SA) of the Federal Bureau of Investigation (FBI) and

7   have been so employed since March 25, 2012.  I am currently assigned to the Seattle

8   Division, Vancouver, Washington, Resident Agency of the FBI, where I investigate

9   violations of federal law.  I have received training and gained experience in interviewing

10   and interrogation techniques, arrest procedures, search warrant applications, the

11   execution of searches and seizures, computer crimes, white collar crimes, and various

12   other criminal laws and procedures.  Since August of 2012, I have been involved in

13   investigations of white collar crimes, securities fraud, bank fraud, and wire fraud.

14         12.   The facts set forth in this Complaint are based on information obtained by

15   me and others during this investigation from a variety of sources, including, but not

16   limited to: (a) information provided to me by the United States Securities and Exchange

17   Commission ("SEC"); (b) business records and other documents obtained from various

18   third party entities; (c) information provided to me by CS-1; and (d) publicly available

19   documents.

20         13.   Because this Complaint is submitted for the limited purpose of establishing

21   probable cause in support of arrest warrants, it does not set forth each and every fact that

22   I or others have learned during the course of this investigation.  I have set forth only the

23   facts that I believe are necessary to establish probable cause to believe that the

24   Defendants have committed violations of Conspiracy to Commit Securities Fraud, in

25   violation of Title 18, United States Code, Section 371, and Conspiracy to Launder

26   Monetary Instruments, in violation of Title 18, United States Code, Section 1956(h).

27

28

Complaint/Mrowca et al- 8

## II.  SUMMARY OF THE CONSPIRACIES

14.     CHRISTOPHER MROWCA, ALEXANDER HAWATMEH, and MIKHAIL GALAS, together with others known and unknown, agreed to defraud investors by engaging in a stock "pump and dump" scheme.  In furtherance of the conspiracy, HAWATMEH, GALAS, and other associates, first accumulated large positions in a thinly-traded "penny stock" in brokerage accounts that they controlled. During and after accumulating the shares, MROWCA, HAWATMEH, GALAS, together with others, "pumped" the share price of the stock by, among other thing, (1) engaging in secret, coordinated trading designed to artificially increase the price of the stock, while also creating the false appearance of demand, and (2) sending fraudulent and misleading "blast" e-mails through promotional websites and email addresses under their control with the intent of increasing demand for the stock.  After a period of manipulation, MROWCA, HAWATMEH, GALAS, and other associates "dumped" the accumulated shares by selling it to unsuspecting investors at the artificially high prices they themselves had created, with the intent to share the proceeds of the those sales amongst themselves.

15.     Once substantial profits were obtained through the fraudulent sales of the stock, MROWCA and HAWATMEH agreed to distribute and share the proceeds by engaging in financial transactions designed to conceal the money's true source, ownership and control.  In furtherance of the agreement, HAWATMEH, rather than pay MROWCA his share of the profits from the fraudulent stock sales directly, instead deposited large sums of cash in a bank account opened in the name of a Confidential Source ("CS-1"), or purchased precious metals on behalf of MROWCA.

16.     To date, an analysis of brokerage accounts believed to be controlled by MROWCA, HAWATMEH, and GALAS revealed that between December 2011 and present, the three men appeared to have engaged in coordinated trading activities in approximately 100 different publicly traded securities, including 45 publicly traded

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  securities where MROWCA, HAWATMEH, GALAS, and other associates generated
2  collective profits of more than $10,000 for each stock.

3       17.     For the purpose of establishing probable cause for arrest warrants, this
4  affidavit sets forth in detail the evidence pertaining to the manipulation of one such
5  publicly traded security, ISM International (ticker symbol "ISML") and the laundering of
6  the proceeds obtained from the manipulation and sale of ISML.

7                              **III. BACKGROUND**
8       At all times relevant to this Complaint:
9  **A.    Defendants.**

10       1.     CHRISTOPHER MROWCA is currently a resident of Bradenton, Florida.
11  Between in or about December 2011 through at least April 2014, MROWCA resided in
12  Boulder, Colorado.

13       2.     ALEXANDER HAWATMEH is a resident of Salem, Oregon.  Between in
14  or about February 2012 and October 2012, HAWATMEH resided in Vancouver,
15  Washington.

16       3.     MIKHAIL GALAS is a resident of Vancouver, Washington.
17  **B.    "Pump and Dump" Scheme**.

18       4.     Based on my training, experience, and information provided by others, I
19  know that a "pump and dump" scheme is a form of market manipulation designed to
20  create a false and misleading appearance of a market for and interest in the security of a
21  publicly traded company in order to entice unsuspecting investors to purchase the stock at
22  artificially high prices.  There are generally three phases to a pump and dump scheme: (1)
23  obtaining and concealing control of a significant portion of a publicly traded company's
24  stock; (2) fraudulently inflating the price and trading volume of the company's stock
25  through a variety of means, including engaging in manipulative, coordinated trading of
26  the company's stock to create the false appearance of market interest, and disseminating
27  false and misleading promotional materials to the investing public; and (3) once the stock
28  price has been fraudulently inflated, selling or "dumping" the stock at the fraudulently

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

inflated price.  The price of the manipulated stock collapse soon after the dump as the perpetrators cease propping up the stock's price, and innocent investors are left with worthless stock.

5.      Individuals engaged in pump and dump schemes are frequently affiliated with penny stock promotion websites and/or email accounts.  These individuals use these websites and email accounts to disseminate false and misleading promotional materials concerning the stock.  For example, they will blast false and misleading email communication touting a likely sudden increase in a particular stock price or volume without disclosing the fact that, in truth, the promoters were responsible for the recent increase in price and volume through their manipulative, coordinated trading activities. Manipulators frequently cause the dissemination of a barrage of misleading promotional materials concerning a specific stock at or near the end of the manipulation.  The manipulators then sell their accumulated position at the same time the promotions are disseminated, thus profiting from the interest generated by the promotions.

6.      The stocks favored in market manipulation schemes are generally those that are thinly traded and quoted through an "over-the-counter" alternative trading service, such as OTC Markets or OTCBB.  These OTC trading platforms provide a marketplace to quote and trade shares of companies that do not meet the listing requirements for trading on a national exchange, such as the New York Stock Exchange or NASDAQ. Many companies, or "issuers," that offer their stock through OTC trading platforms do not submit regular, independently audited financial reports or make other disclosures with the SEC.  The securities associated with such non-filing issuers do not have many buyers and sellers; in other words, they are "thinly traded."  They also often trade at prices well below one dollar per share, and hence are sometimes known as "penny stocks."  With little to no information about the issuer coupled with thin trading, such stocks are susceptible to manipulation by individuals who are able to accumulate large blocks of shares.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**C.   Manipulative Stock Trading Practices.**

7.     Manipulative trading frequently involve trading activity with no real economic purpose, including "matched trades" and a practice known as "layering" or "spoofing."

8.     <u>Matched Trades</u>:  A matched trade is trading that involves the prearranged purchase and sale of stock between accounts controlled by different parties.  Colluding parties engage in matched trades in order to create the misleading impression of an increase in trading volume and price.

9.     <u>Layering or Spoofing</u>:  Layering or spoofing is a practice where a trader places non-bona fide orders - orders that the trader does not intend to have executed - to induce others to buy or sell a stock at a price not representative of actual supply and demand.  More specifically, when engaging in layering or spoofing, a trader repeatedly enters a buy order for a stock that the trader subsequently cancels prior to trade execution.  This type of activity is manipulative because it is done with the intention of tricking other investors to purchase the stock at an artificial price driven by the orders the trader cancels.  Layering and spoofing impacts the best bid price and gives the market false impression of active trading and volume when, in fact, the trader had no intention of completing the purchase.

## IV.  INVESTIGATION

**A.   Manipulation of ISM International.**

**1.   *ISM International.***

10.     ISML is quoted on OTC Pink, an over-the-counter securities market platform that does not require issuers to meet any financial standards or comply with regulatory filings requirements.  OTC Pink listed issuers may choose to make public pertinent corporate information, financial statements, press releases, and other disclosures by posting them on the OTC Pink website.  According to information posted on OTC Pink, ISML was first incorporated in Delaware in May 2005.  ISML's registered address is in Clearwater, Florida.  The company purportedly "specializes in innovation,

Complaint/Mrowca et al- 12

1   technology and manufacturing organic products ," "has the ability to produce full feature

2   movies and TV Commercials," owns a "Fleamarket," distributes a series of "Wi-Fi

3   products" and is "involved in the development of new devices focusing on Clean, Green

4   Energy." A review of the few unaudited financial statements ISML posted to the OTC

5   Pink website revealed that the company had generated zero income from operations prior

6   to July 2011, and thereafter consistently operated at a loss with the only source of

7   reported revenue coming from the operation of a "flea market." ISML's last posting to

8   OTC Pink was in September 2012. No further information is available about the

9   company after that date.

10          **2.    *Relevant brokerage accounts.***

11          11.    Information received from on-line brokerage firm E*Trade confirmed that

12   on or about January 13, 2011, ALEXANDER HAWATMEH opened a brokerage account

13   number ending *9710, with a mailing address located in Lincoln City, Oregon.

14   Beginning sometime in or about April 2012, the mailing address associated with the

15   brokerage account was changed to an address in Vancouver, Washington.

16          12.    According to the on-line brokerage firm E*Trade, on or about January 19,

17   2010, CHRISTOPHER MROWCA opened a brokerage account number ending *3734,

18   with a mailing address located in Boulder, Colorado.

19          13.    Fidelity Investments provided records showing that MIKHAIL GALAS, on

20   or about September 2, 2011, opened a Fidelity on-line brokerage account number ending

21   *5453, with a mailing address located in Federal Way, Washington. The current mailing

22   address associated with the account is an address in Vancouver, Washington.

23          14.    E*Trade also provided information that on or about March 25, 2012, CS-1

24   opened E*Trade brokerage account number ending *2314.

25          **3.    *Coordinated Trading Activity in ISML.***

26          15.    During the investigation, I reviewed analysis prepared by the SEC

27   regarding securities trading activity in the brokerage accounts belonging to MROWCA,

28   HAWATMEH, GALAS, and others. I have also reviewed data provided by the relevant

Complaint/Mrowca et al- 13

1 brokerage firms, including E*Trade and Fidelity, reflecting in detail the trading activity

2 of MROWCA, HAWATMEH, and GALAS.  The analysis and the data together revealed

3 patterns that evidenced intentional, coordinated trading of ISML by MROWCA,

4 HAWATMEH, and GALAS in an effort to create the appearance of an active market in

5 ISML and to raise its price.

6        16.     Beginning on or about December 15, 2011, and continuing through April

7 10, 2012, HAWATMEH accumulated approximately 2.6 million shares of ISML at prices

8 ranging from approximately $.009 to $.09 in his E*Trade account *9710.  During this

9 period, HAWATMEH's trading accounted for approximately 85% of total trading

10 volume in ISML.  In other words, HAWATMEH was by far the single largest investor in

11 ISML between December 15, 2011 and April 10, 2012.

12        17.     At the same time HAWATMEH was accumulating shares, an examination

13 of trading records showed that MROWCA used his brokerage account to spoof ISML and

14 manipulate the trading volume and influence the "best bid" price for the stock.  Between

15 on or about December 16, 2011, and April 12, 2012, MROWCA entered approximately

16 50 buy orders for ISML at limit prices ranging from $.01 up to $.07.  Every one of those

17 orders, however, was cancelled or allowed to expire without MROWCA completing the

18 purchase of a single share of ISML.

19        18.     A "limit price" for a buy order directs the broker to only buy the stock at

20 the limit price or lower.  The higher the limit price, the higher an investor is signaling that

21 he or she is willing to buy that particular stock.  In this case, however, MROWCA,

22 entered numerous successive buy orders at progressively higher limit prices, only to

23 cancel the purchase order or allow it to expire, never actually executing the purchase.  I

24 know from information provided by the SEC that a *bona fide* investor has little economic

25 reason to enter such a high number of purchase orders over such a long period of time, in

26 this case over four months, and not execute a single one.  Instead, MROWCA's trading

27 pattern is indicative of an effort to "spoof" or manipulate the stock's volume and give the

28

Complaint/Mrowca et al- 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | fraudulent appearance that investors are interested in this stock at higher and higher

2 | prices.

3 |         19.     Also during the time when HAWATMEH was accumulating ISML shares,

4 | the SEC analysis showed that HAWATMEH and GALAS engaged in a "matched trade,"

5 | designed to create the appearance of demand for ISML and to raise its price. Between on

6 | or about January 18, 2012 and on or about February 10, 2012, GALAS began purchasing

7 | ISML in his Fidelity brokerage account *5453 at prices ranging from $.03 to $.04 per

8 | share, eventually accumulating a total of 70,000 shares. On February 28, 2012, at

9 | approximately 11:29 a.m. Eastern, HAWATMEH placed a buy order through his

10 | E*Trade brokerage account *9710 for approximately 500,000 shares at a limit price of

11 | $.07 per share. At approximately 11:29 a.m. Eastern, GALAS entered sell orders totaling

12 | 70,000 shares of ISML at a limit price of $.07 per share through his Fidelity brokerage

13 | account. Thereafter, at approximately 11:32 a.m. Eastern, both GALAS's Fidelity

14 | account and HAWATMEH 's E*Trade account confirmed that HAWATMEH sold and

15 | GALAS purchased 70,000 shares of ISML at $.07 per share.

16 |         20.     Notably, according to SEC's analysis, when GALAS's ISML trades are

17 | combined with HAWATMEH's trades for the time period between December 15, 2011

18 | and April 10, 2012, the two men accounted for 95% of the total trading volume in ISML.

19 | In other words, the vast majority of all buying and selling of ISML in that time period

20 | were executed solely by the two men.

21 |         21.     Starting on or about April 11, 2012, and continuing through April 20, 2012,

22 | the SEC analysis showed that HAWATMEH was a net seller of ISML, often selling to

23 | the same parties, including MROWCA, GALAS, and CS-1 in what appeared to be

24 | coordinated "matched trades." Such coordinated buying and selling amongst associated

25 | individuals within a short span of time have little legitimate economic purpose, and are

26 | generally done for the purpose of creating the false appearance of an active market for

27 | ISML and to try and raise the price of ISML. The following is a chart detailing the

28 | suspected matched trades:

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Date | Account | Order Time | Order Quantity | Limit Price | Buy/Sell | # of Shares Executed | Exec. Price | Execution Time |
|------|---------|-----------|---------------|------------|----------|---------------------|------------|---------------|
| 4/13/12 | Hawatmeh | 11:52:16 AM | 100,000 | $0.0650 | Sell | 100,000 | $0.06500 | 12:03:04 PM |
| 4/13/12 | Mrowca | 12:02:58 PM | 10,000 | $0.0700 | Buy | 10,000 | $0.06500 | 12:03:04 PM |
| 4/16/12 | Hawatmeh | 11:23:16 AM | 140,000 | $0.0700 | Sell | 140,000 | $0.07000 | 11:32:38 AM |
| 4/16/12 | CS-1 | 11:31:41 AM | 100,000 | $0.0700 | Buy | 100,000 | $0.07000 | 11:32:38 AM |
| 4/16/12 | CS-1 | 1:12:25 PM | 70,000 | $0.0750 | Buy | 70,000 | $0.07500 | 1:13:26 PM |
| 4/16/12 | Mrowca | 1:13:03 PM | 115,000 | $0.0750 | Sell | 70,000 | $0.07500 | 1:13:26 PM |
| 4/19/12 | Galas | 9:13:37 AM | 30,000 | $0.080 | Buy | 500 | $0.08000 | 12:02:01 PM |
| 4/19/12 | Hawatmeh | 12:01:40 PM | 500 | $0.0100 | Sell | 500 | $0.08000 | 12:02:01 PM |
| 4/20/12 | Mrowca | 9:34:12 AM | 5,000 | $0.2300 | Buy | 1,372 | $0.19000 | 9:34:42 AM |
| 4/20/12 | Hawatmeh | 9:34:16 AM | 100,000 | $0.1800 | Sell | 100,000 | $0.19000 | 9:34:42 AM |

22.     In addition to the coordinated trading, the trading records indicated that between April 11, 2012 and April 19, 2012, MROWCA, HAWATMEH, and GALAS were, in general, engaged in very active trading in ISML with a number of other individuals.  During the time period between April 11, 2012, and April 19, 2012, HAWATMEH sold approximately 1.8 million shares of ISML and purchased approximately 280,000 shares.  During the time period between April 11, 2012, and April 19, 2012, GALAS purchased approximately 170,000 shares of ISML and sold approximately 85,000 shares.  During the time period between April 11, 2012 and April 19, 2012, MROWCA bought and sold 125,000 shares of ISML without generating any substantial profits.  Finally, during the time period between April 11, 2012 and April 19, 2012, CS-1 purchased 272,000 shares of ISML and sold 170,000 shares.

23.     According to information provided by the SEC, during the time period between April 11, 2012, and April 19, 2012, the total market volume for ISML was approximately 3,337,014.   Taken together, the trading activity in the accounts in the names of MROWCA, HAWATMEH, GALAS and CS-1 represented about 90% of the entire trading volume of ISML in that time period, indicating that these individuals

Complaint/Mrowca et al- 16

1   essentially controlled most of the buying and selling of ISML.  Significantly, the share

2   price of ISML steadily rose during the period of active trading by MROWCA,

3   HAWATMEH, GALAS, and CS-1.  On April 11, 2012, shares of ISML closed at

4   $0.0405.  On April 19, 2012, shares of ISML closed at $0.096.

5       **4.    *Money Runners Group LLC promotion of ISML and the dump of ISML***

6       ***shares.***

7       24.    Money Runners Group LLC is a company engaged in stock promotions.

8   The company's promotional materials are disseminated through an affiliated email

9   address themoneyrunner@gmail.com.  Investors who subscribe to Money Runners Group

10   receive emails promoting various stocks.  The investigation has revealed that MROWCA

11   controls Money Runners Group LLC.  According to a Lexis public database search,

12   "Chris Mrowca" and "Matt Jonathan" are listed as managing members of Money Runners

13   Group LLC, and its registered address is 6901 Lookout Road, Boulder, Colorado.  That

14   address is the same address of record for E*Trade account *3734 opened in the name of

15   CHRISTOPHER MROWCA.  According to subscription records provided by Google,

16   themoneyrunner@gmail.com account was opened on October 20, 2011, and registered to

17   "Matt Jonathan."  The subscription records also listed another email account

18   cuchrism@gmail.com as a secondary email account.  According to Google, the email

19   account cuchrism@gmail.com is subscribed by "Chris Mocha."  As detailed further

20   below, CS-1 explained to investigators that MROWCA frequently uses the alias "Chris

21   Mocha."  Furthermore, Google's subscription records confirmed that

22   themoneyrunner@gmail.com account was first opened from IP address 66.180.140.47.

23   According to E*Trade records, on October 20, 2011, the same IP address was used to

24   access MROWCA's E*Trade account ending in *3734.

25       25.    Finally, during the course of this investigation, I and others have conducted

26   an analysis of a Wells Fargo bank account number ending *1879 opened in the name of

27   "Money Runners Group LLC."  MROWCA controls and enjoys the benefits of the funds

28   in the Money Runners Group account.  For example, on or about December 31, 2012, a

Complaint/Mrowca et al- 17

1   "Chris Mrowca" signed a check issued from the Wells Fargo account *1879 in the

2   amount of $60,000 made payable to "Schomp BMW," toward the purchase of a BMW

3   vehicle.  A check of vehicle registration information from Colorado State confirmed that

4   CHRISTOPHER JONATHAN MROWCA is the registered owner of a 2013 BMW

5   550xi.  Currently, the registration for the vehicle is in the state of Florida, also in the

6   name of MROWCA.

7        26.    During and at the end of the period of coordinated trading in ISML,

8   MROWCA, through Money Runners Group and its email account, issued false and

9   misleading promotional messages designed to induce unsuspecting investors to purchase

10  ISML.  While I have not reviewed all of the promotional materials, I know that on April

11  13, 2013, subscribers to the Money Runners Group received an email message urging

12  them to stay tuned for a new "alert" for a stock "play" scheduled for April 20, 2012, at

13  9:30 a.m. Eastern.  I know from having reviewed other promotional materials that an

14  "alert" means that Money Runners Group will reveal to members on the scheduled day a

15  stock recommendation.  In the April 13, 2012, message, while not revealing the name of

16  the stock, Money Runner Group claimed that the company they will tout on April 20th

17  "is about to make some BIG moves and with a VERY small float and with what the

18  company has to offer we can see the largest stock gainer Money Runners has ever seen!"

19  (Emphasis in original).  The message further represented that "Money Runners team will

20  be personally Buying loads of shares when we alert on 4/20!"  (Emphasis in original).

21       27.    I know from my investigation that this message distributed on April 13,

22  2012, was in anticipation of the Money Runners Group "alert" issued on April 20, 2012,

23  regarding ISML.  The April 13, 2012 email was designed to raise interest in and focus on

24  April 20th and contains false and misleading claims.  First, the April 13, 2012 message

25  stated that Money Runners Group believes the company is about make some "BIG

26  moves," referring to stock price, without disclosing that between April 13th and April

27  20th, approximately 90% of all trading was controlled by MROWCA and his associates

28  and that any moves in stock price were likely not the result of interest by *bona fide*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  investors.  Second, the claim that "Money Runners team will be personally Buying loads
2  of shares when we alert on 4/20" is false and misleading in that, as detailed below, the
3  message fails to explain that MROWCA and his associates, rather than buying more of
4  ISML, plan to sell their accumulated shares to the investors unlucky enough to take
5  Money Runners Group's advice to buy ISML.

6       28.    On April 19, 2012, Money Runners Group issued another email to
7  subscribers reminding them that a "Monster pick" would be revealed by the company on
8  Friday, April 20, 2012 at 9:30 a.m. Eastern.  The email also advised investors that a safe
9  "entry point," in other words, the safe price at which to purchase the stock, is at a price of
10  $0.13 to $0.11 or lower.  Money Runners Group warned investors "if you miss these
11  entry points please consider waiting."  Although couched as sober advice, the claim that
12  such prices were "safe" entry points are false and misleading and designed to take
13  advantage of investors.  That is because MROWCA, HAWATMEH, GALAS and others
14  knew and understood that the majority of the shares accumulated by HAWATMEH,
15  GALAS and others were accumulated at prices well below the touted "safe" levels and
16  that because these individuals constituted the vast majority of the trading volume, once
17  they sell at these prices, taking their profits, the price of the stock will collapse as no
18  further buying occurs.

19       29.    On April 20, 2012, Money Runners Group, as promised, alerted its
20  subscribers and identified ISML as their "play."  While I have as of yet not been able to
21  obtain all of the promotional materials issued on that day, I know that one of the Money
22  Runner Group's messages dated April 20, 2012, stated: "ISML Now up 65% From
23  [sic]our Alert at .10.  Check out the news they just released!"  The email reprinted a press
24  release purportedly posted by ISML announcing that the company had acquired a studio
25  that produced motion pictures and TV commercials, and that the company planned to
26  start the production of an action movie.

27       30.    In addition to the Money Runners Group promotional emails, on April 20,
28  2012, there were several promotional messages about ISML published through,

Complaint/Mrowca et al- 19

1  "Investorshub.com," through the username "HotStockAce." Investorshub.com is a
2  website that hosts message boards dedicated to discussion of various stocks. I have
3  reason to believe that "HotStockAce" is MROWCA. I have reviewed documents
4  produced by Investorshub.com to the SEC that show that the user name "HotStockAce"
5  at Investorshub.com is registered to MROWCA. A review of bank records for accounts
6  opened in MROWCA's name show repeated payments to Investorshub.com. Two such
7  messages that "HotStockAce" posted about ISML stated ".200000sssss should be coming
8  here sooon. :)" and "Was only able to get 40 k shares now of this. Looking hot."

9       31.    Notably, the Money Runner Group message and Investorshub posts do not
10  disclose that nearly all of the previous trading activity in ISML securities was made up of
11  the manipulative trading described above, and not as a result of or in anticipation of any
12  activity or announcement by ISML itself, or that HAWATMEH, MROWCA, and
13  GALAS stood to profit handsomely from purchases of ISML stock by the recipients of
14  these promotional materials.

15       32.    By the close of trading on April 19, 2012, HAWATMEH had remaining
16  approximately 995,000 shares of ISML in his E*Trade account. Immediately after the
17  promotion began on April 20, 2012, HAWATMEH sold the entirety of his holdings.
18  Within a span of approximately four minutes, beginning at approximately 9:32 a.m.
19  Eastern and finishing at approximately 9:36 a.m. Eastern, HAWATMEH liquidated his
20  entire position in ISML at prices ranging from $.17 to $.20. HAWATMEH made no
21  further purchase of ISML on April 20, 2012 or anytime thereafter. Overall, from
22  December 15, 2011, through April 20, 2012, HAWATMEH's E*Trade account generated
23  profits of approximately $223,000 from trading in ISML stock.

24       33.    By the close of trading on April 19, 2012, GALAS had remaining
25  approximately 85,000 shares of ISML in his Fidelity account. On April 20, 2012, at
26  approximately 9:30 a.m. Eastern, when Money Runner Group first issued its promotion
27  for ISML, GALAS's Fidelity account executed a purchase of an additional 25,000 shares
28  of ISML at a price of $0.13 per share. As the promotion was being absorbed, at

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   approximately 9:34 a.m. Eastern, GALAS' Fidelity account executed a sale of the 25,000
2   shares he had just purchased at $0.20 per share, making an immediate profit.  Between
3   approximately 9:30 am and 9:34 am, GALAS further liquidated all remaining holdings of
4   ISML.  Overall, GALAS garnered total profits of approximately $15,000 from the
5   manipulation and sale of ISML.

6       34.     By close of trading on April 19, 2012, MROWCA held no ISML shares in
7   his E*trade account.  On April 20, 2012, beginning at about 9:31 a.m. Eastern and
8   continuing until about 12:46 p.m. Eastern, MROWCA bought and sold approximately
9   104,800 shares of ISML.  MROWCA's trading in ISML did not generate substantial
10  profits in his E*Trade account.  Instead, MROWCA's trading pattern on April 20, 2012,
11  is indicative of an individual trading simply in order to provide support for ISML's stock
12  price while his associates sold their holdings.

13      35.     Following the promotion of ISML, and after HAWATMEH and GALAS
14  liquidated their holdings of ISML, the price and trading volume of ISML collapsed.
15  According to information provided by the SEC, the total trading volume on ISML on
16  April 20, 2012 was approximately 4.9 million shares and reached the high price of $0.22
17  before closing at $0.10 when MROWCA and his associates ceased all their trading
18  activity.  By May 1, 2012, ISML was trading at approximately $0.06 per share with less
19  than 300,000 shares changing hands.  By May 20, 2012, one month after the promotion,
20  ISML traded at $0.03 per share with less than 200,000 shares trading hands.

21      36.     During the time period of the ISML manipulation and in the months
22  following, the investigation uncovered a number of financial transactions between and
23  among HAWATMEH, MROWCA, and GALAS that demonstrated that the individuals
24  knew one another and were engaged in substantial financial dealings with one another.
25  For example, on April 11, 2012, the day before MROWCA's E*trade account began
26  actively trading ISML, a Bank of America checking account opened in Washington State
27  and held in the name of ALEXANDER HAWATMEH wired approximately $13,975, to a
28  Wells Fargo bank account opened in Colorado and held in the name of CHRISTOPHER

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   MROWCA.  Records obtained from Apmex, a precious metals dealer, show that on June

2   12, 2012, within two months of the ISML promotion, MROWCA ordered $9,074.26

3   worth of silver and gold from Apmex which were shipped to MROWCA's residence in

4   Boulder, Colorado.  The Apmex records and HAWATMEH's Bank of America bank

5   account records show that HAWATMEH paid for this order by wiring money from his

6   Bank of America account located in Washington State.

7        37.    Finally, HAWATMEH's Bank of America checking account records also

8   reflect the deposit of an $8,110 check made payable to HAWATMEH issued by

9   MIKHAIL GALAS dba Kaputsa Research Group on June 26, 2012.

10       ***5.***     ***Interview of CS-1.***

11        38.    During the investigation, I interviewed CS-1.[1]  As discussed more fully

12   below concerning the use of CS-1's bank account to launder the proceeds of the ISML

13   manipulation, a number of the statements made by CS-1 during his interview have been

14   corroborated by independent evidence.

15        39.    According to CS-1, he was a friend of MROWCA who lived in close

16   proximity to MROWCA's residence in Boulder, Colorado.   In his interview, CS-1 said

17   that MROWCA frequently uses the alias "Chris Mocha."  CS-1 described how in early

18   2012 MROWCA and CS-1 began discussing trading stocks.  Shortly thereafter, at

19   MROWCA's suggestion, CS-1 opened an E*Trade account for the purpose of trading

20   stocks.  According to CS-1, CS-1 had no knowledge of securities trading and he relied

---

[1]According to information I received from the SEC, on or about September 29, 2013, CS-1 filed a tip concerning the manipulative trading of HAWATMEH and MROWCA with the SEC pursuant to the SEC's Whistleblower Program as defined by Title 15, United States Code, Section 78u-6, and the rules and regulations thereunder.  The SEC's Whistleblower Program provides for monetary awards of between 10 percent and 30 percent of any money collected by the SEC in an enforcement action if an individual who provides a tip to the SEC meets certain requirements.  In addition, CS-1 has a recent conviction for Contributing to the Delinquency of Minor for which he is serving a term of probation.  In addition to participating in the ISML promotion, CS-1 participated in, and profited from, two additional promotions conducted by Mrowca, and made a total of approximately $3,156 in those promotions.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 upon MROWCA to direct his trading activity, including telling CS-1 what stock to buy,

2 including the amount, price and type of order to place.  These directions usually came

3 from MROWCA during telephone conversations during the trading day, but on one

4 occasion MROWCA directed CS-1's trading by Facebook message.

5      40.     CS-1 said that in or around April 2012, MROWCA told him about a

6 promotion MROWCA's company, Money Runners Group, was doing in ISML.

7 According to CS-1, on April 12, 2012, MROWCA directed CS-1 to purchase ISML in

8 CS-1's E*Trade account and told CS-1 that he was guaranteed to make a 50% profit.

9 MROWCA told CS-1 that the promotion was scheduled for April 20, 2012.  In addition

10 to the April 12, 2012, purchases, CS-1 bought additional ISML shares without input from

11 MROWCA.

12      41.     On April 16, 2012, CS-1 participated in a conference call with MROWCA,

13 HAWATMEH, and GALAS where they discussed and executed coordinated trading in

14 ISML stock.  In a subsequent conference call on April 19, 2012, CS-1 participated in a

15 conference call with HAWATMEH and MROWCA where HAWATMEH directed CS-1

16 to sell a portion of the ISML stock CS-1 had purchased without input from MROWCA.

17 Those matched trades were confirmed by a review of the brokerage account records and

18 were reflected in the ISML chart above, the relevant portion of which is set forth again

19 here:

20

| Etrade | 10:22:49 AM | ISML | 0.09000 | HAWATMEH | BUY | 4/19/2012 | 4,547 | 0.09000 |
| Etrade | 10:50:45 AM | ISML | 0.09500 | CS-1 | SELL | 4/19/2012 | 70,000 | 0.09500 |
| Etrade | 12:41:15 PM | ISML | 0.09510 | HAWATMEH | BUY | 4/19/2012 | 25,000 | 0.09510 |
| Etrade | 2:08:40 PM | ISML | 0.11000 | CS-1 | SELL | 4/19/2012 | 50,000 | 0.11000 |

23

24      42.     According to the SEC analysis, at the beginning of trading on April 20,

25 2012, CS-1 had remaining in his account approximately 102,000 shares of ISML, the

26 entirety of which he sold, like HAWATMEH and GALAS, on April 20th.  CS-1 made

27 approximately $12,975.80 on the promotion of ISML.

28

Complaint/Mrowca et al- 23

**B.      Laundering of Proceeds from Manipulation of ISML.**

43.      During his interview, CS-1 also described how shortly after the promotion on April 20, 2012, MROWCA asked CS-1 to use CS-1's bank account to transfer money from HAWATMEH's profits on the ISML promotion to MROWCA.  MRWOCA told CS-1 that since MROWCA was running the ISML promotion, he could not own shares himself, and therefore, HAWATMEH was "trading on [MROWCA's] behalf."  MROWCA told CS-1 that CS-1 owed MROWCA a debt since CS-1 had made money off the ISML promotion.  According to CS-1, MROWCA and HAWATMEH arranged for HAWATMEH to deposit proceeds of the ISML manipulation in cash into CS-1's Wells Fargo bank account.  Shortly after the money was deposited, MROWCA picked up CS-1 and drove him to a Wells Fargo branch so that CS-1 could withdraw the same amount of cash and give it to MROWCA.

44.      During the investigation, together with an FBI forensic accountant, I obtained and reviewed various pertinent bank accounts opened in the names of HAWATMEH and CS-1 and was able to confirm CS-1's account of how HAWATMEH shared the proceeds of the ISML manipulation scheme with MROWCA through the use of CS-1's account.  The accounts reviewed included:

         a.      A Bank of America account in the name of ALEXANDER E. HAWATMEH ending in 0402; and

         b.      A Wells Fargo account in the name of CS-1 ending in 1263.

45.      The review and analysis of HAWATMEH's Bank of America account ending in 0402 revealed significant deposits from HAWATMEH's E*Trade account ending in 9710.  From January 31, 2012 through September 20, 2012, the time period which included the ISML manipulation described above, HAWATMEH made 38 transfers totaling approximately $282,230 from his E*Trade account to his Bank of America account ending in 0402.  A number of these deposits were made within weeks of HAWATMEH's sale of ISML stock on April 20, 2012 as shown below:

| DATE | DESCRIPTION | CREDIT | SOURCE |
|------|-------------|--------|--------|

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| DATE | DESCRIPTION | CREDIT | SOURCE |
|------|-------------|--------|--------|
| 4/23/12 | ACH Transfer | $8,000 | E*Trade |
| 4/24/12 | ACH Transfer | $7,500 | E*Trade |
| 4/25/12 | ACH Transfer | $5,000 | E*Trade |
| 4/26/12 | ACH Transfer | $5,000 | E*Trade |
| 4/30/12 | ACH Transfer | $25,000 | E*Trade |
| 4/30/12 | ACH Transfer | $5,000 | E*Trade |
| 4/30/12 | ACH Transfer | $3,000 | E*Trade |
| 5/2/12 | ACH Transfer | $8,000 | E*Trade |
| 5/2/12 | Wire Transfer | $50,000 | E*Trade Bank |
| 5/3/12 | ACH Transfer | $6,500 | E*Trade |
| 5/4/12 | ACH Transfer | $8,800 | E*Trade |
| 5/9/12 | ACH Transfer | $5,000 | E*Trade |
| 5/10/12 | ACH Transfer | $5,000 | E*Trade |
| 5/10/12 | ACH Transfer | $5,000 | E*Trade |
| 5/11/12 | ACH Transfer | $2,500 | E*Trade |
| 6/13/12 | ACH Transfer | $5,000 | E*Trade |
| 6/20/12 | ACH Transfer | $7,000 | E*Trade |
| 6/20/12 | ACH Transfer | $5,000 | E*Trade |
| 6/21/12 | ACH Transfer | $5,000 | E*Trade |

46.    During the period of time in which HAWATMEH was transferring proceeds from the E*Trade account to his Bank of America account, analysis also showed that HAWATMEH made frequent and substantial cash withdrawals. For the time period of March 26, 2012 through December 9, 2013, there were 33 cash withdrawals totaling approximately $229,300. A number of these cash withdrawals were made in the weeks following April 20, 2012:

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 4/25/12 | Cash Withdrawal | $8,000 |
| 4/30/12 | Cash Withdrawal | $20,000 |
| 5/2/12 | Cash Withdrawal | $20,000 |
| 5/4/12 | Cash Withdrawal | $8,000 |
| 5/17/12 | Cash Withdrawal | $5,000 |
| 5/18/12 | Cash Withdrawal | $8,000 |
| 6/4/12 | Cash Withdrawal | $5,000 |
| 6/21/12 | Cash Withdrawal | $7,000 |

47.     As described above, CS-1 told me that MROWCA and HAWATMEH arranged to use CS-1's bank account to transfer money from HAWATMEH to MROWCA as part of the ISML manipulation.  Upon review of the Wells Fargo account belonging to CS-1, I noted the following large cash deposits by someone into CS-1's bank account.  Notably these deposits all took place in a Wells Fargo branch located in Vancouver, Washington.  The investigation showed that HAWATMEH lived at an address in Vancouver, Washington at this time.  The following sets forth the cash deposits into CS-1's Wells Fargo Account:

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 4/23/12 | Cash Deposit | $6,000 |
| 4/30/12 | Cash Deposit | $8,000 |
| 5/15/12 | Cash Deposit | $8,000 |
| 5/17/12 | Cash Deposit | $8,000 |
| 5/25/12 | Cash Deposit | $7,600 |

48.     Review of CS-1's Wells Fargo account further confirmed cash withdrawals shortly after the deposits consistent with CS-1's statements that he withdrew the money deposited by HAWATMEH in order to provide them to MROWCA.  The bank records reflect the following cash withdrawals from CS-1's Wells Fargo account on the listed days:

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 4/23/12 | Withdrawal | $6,000.00 |

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| 4/30/12 | Withdrawal | $2,000.00 |
| 4/30/12 | Withdrawal | $6,000.00 |
| 5/16/12 | Withdrawal | $8,000.00 |
| 5/18/12 | Withdrawal | $8,000.00 |
| 5/29/12 | Withdrawal | $7,500.00 |

49.    In addition to the cash transactions, I have obtained evidence that HAWATMEH also shared the proceeds of the ISML manipulation with MROWCA by funding the purchase of precious metals on behalf of MROWCA.  During the investigation, I reviewed documents produced by Apmex, a precious metals dealer located in Oklahoma City, Oklahoma relating to MROWCA's Apmex account (customer ID #299147) and HAWATMEH's Apmex account (customer ID #710641).

//

//

//

//

//

//

//

//

//

//

//

//

//

Complaint/Mrowca et al- 27

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

50.     The records for MROWCA's Apmex include a purchase order dated June 12, 2012, for silver and gold worth in the approximate amount of $9,074.26.   This order was shipped to the same address on Lookout Road in Boulder, Colorado that is associated with MROWCA's brokerage account.   The Apmex account also lists MROWCA's email address cuchrism@gmail.com as the email address of record.   According the Apmex records, this order was paid for by HAWATMEH.   Bank records and Apmex account records confirm that HAWATMEH wired $9,074.26 from his Bank of America account to pay for MROWCA's June 12, 2012 purchase.

Dated this ____ day of ___August___, 2014.

_____
THOMAS D. KOH, Affiant
Special Agent
Federal Bureau of Investigation

SUBSCRIBED AND SWORN before me this ____ day of August, 2013.

_____
DAVID W. CHRISTEL
United States Magistrate Judge

Complaint/Mrowca et al- 28